**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **EDWARD WILLIAMS, #B80477,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 25-cv-00004-SMY** |
| | ) | |
| **JOSHUA PARKER** | ) | |
| **and DANIEL MONTI,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Edward Williams filed this action against Joshua Parker and Daniel Monti under 42 U.S.C. § 1983 for their alleged failure to protect him from an inmate attack, in violation of the Eighth Amendment.  (Doc. 1).  Defendant Parker now moves for summary judgment based on Plaintiff's failure to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (Doc. 47).  Plaintiff opposes the motion.  (Doc. 51). Because the undisputed facts establish that Plaintiff failed to exhaust his remedies against this defendant, Defendant Parker's motion for summary judgment is **GRANTED**.

### BACKGROUND

Plaintiff filed this action under 42 U.S.C. § 1983 against Internal Affairs Officer Joshua Parker and Warden Daniel Monti after he was attacked by Inmate Carter at Centralia Correctional Center on September 9, 2024.  Plaintiff alleges that this was not his first attack by another inmate. (Doc. 1, p. 15).  Inmate Robinson almost killed Plaintiff after smoking drugs and attacking him at Western Illinois Correctional Center on March 18, 2022.  After transferring to Centralia, Plaintiff informed Officer Parker about his prior assault on July 2, 2024 and that Inmate Carter posed a

1

threat to his safety because he also smoked drugs.  Officer Parker promised to move Plaintiff if he reported any harm caused by Inmate Carter.  *Id*.

Plaintiff wrote a letter to Officer Parker on August 15, 2024 to report Inmate Carter's threats of physical harm and to request separation from him.  Officer Parker did not respond to Plaintiff's first request, and Warden Monti ignored his second request a week later.  Plaintiff then filed an emergency grievance to request protection from Inmate Carter on September 1, 2024. Warden Monti deemed it an emergency on September 3, 2024 and forwarded it to a grievance officer for a referral to internal affairs on September 4, 2024.  Following an investigation by internal affairs, the grievance officer recommended denying it based on information gathered two months earlier, and Warden Monti concurred.  *Id*. at 10-11, 15.  Inmate Carter attacked Plaintiff and knocked out three of his teeth on September 9, 2024.  *Id*.

The Court screened the *pro se* Complaint under 28 U.S.C. § 1915A and allowed Plaintiff to proceed with the following claim:

Count 1:  Eighth Amendment claim against Warden Monti and Internal Affairs Officer Parker for failing to intervene and protect Plaintiff from an attack by Inmate Carter on or around September 9, 2024.

(Doc. 15).  A First Amendment retaliation claim (Count 2) was dismissed without prejudice for failure to state a claim for relief against either defendant.  *Id*.  In their Answers, Defendants Monti and Parker both asserted an affirmative defense based on Plaintiff's failure to exhaust administrative remedies before filing this lawsuit.  (Doc. 26).  Defendant Monti later withdrew his affirmative defense.  (Docs. 35, 37).

## MOTION FOR SUMMARY JUDGMENT

Defendant Parker moves for summary judgment based on Plaintiff's failure to exhaust his administrative remedies before filing suit, in violation of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  (Doc. 47).  Parker claims Plaintiff submitted only two potentially

2

relevant grievances to the ARB: Grievance 1: #K7-0924-954E (dated September 1, 2024) and Grievance 2: #K7-1024-1194E (dated October 17, 2024).  Neither grievance names Parker in connection with Plaintiff's complaint that prison staff failed to protect him from a cellmate attack. *Id*.

Plaintiff does not dispute any proposed findings of fact set forth by Parker.  He merely summarizes the allegations in the Complaint and he asks that summary judgment be denied based on them.  (Doc. 51 at 1-2).

<u>**FINDINGS OF FACT**</u>

The following material facts are undisputed for purposes of the pending motion (*see* Defendant's Findings of Fact (Def. FOF) at Doc. 48; *see also* Plaintiff's Response at Doc. 51): Centralia keeps a copy of each grievance it receives and each response issued by a person with knowledge of the incident.  (Def. FOF 9-11; Doc. 48-5).  The facility also maintains a grievance log that tracks the topic of each inmate grievance, the date each inmate grievance was received for first level review, the date each inmate grievance was received for second level review, whether the grievance was denied, and the date each grievance was returned to the inmate.  (Def. FOF 6-8; Doc. 48-4 and 48-5).

The Administrative Review Board (ARB) maintains a separate grievance log known as IGRV which tracks all grievances the ARB receives from each offender.  (Def. FOF 3-4; Doc. 48-2).  IGRV tracks the topic of each grievance, location of the grievant at the time of the incident, location of the grievant at the time of the grievance, a brief description of the grievance, and the date the grievance was heard or decided by the ARB.  (Def. FOF 5; Doc. 48-3).

According to these records, Centralia received five grievances from Plaintiff between January 2024 and December 2024.  (Def. FOF 14; Doc. 48-5, 48-6, and 48-7).  The ARB has a record of four grievances submitted during this time.  (Def. FOF 12; Doc. 48-2).  Of these, only

two potentially pertain to Officer Parker: Grievance 1: #K7-0924-954E (dated September 1, 2024) and Grievance 2: #K7-1024-1194E (dated October 17, 2024).  (Def. FOF 13; Doc. 48-2).

**Grievance 1: #K7-0924-954E**

In Grievance K7-0924-954E dated September 1, 2024, Plaintiff complained he was not getting along with his cellmate.  (Def. FOF 13; Doc. 48-2).  Plaintiff states that he wrote Warden Monti a letter about a possible failure to protect claim arising from incidents involving his current cellmate who threatened him with violence after smoking drugs.  Plaintiff also explained that his current cellmate reminded him of a past cellmate who attacked him after smoking.  *Id*.

Grievance K7-0924-954E was received for the first level of review on September 3, 2024.  It was sent to the Chief Administrative Officer (CAO) for review and deemed an emergency.  It was received and denied at the second level of review on September 4, 2024.  Plaintiff appealed the grievance to the ARB on September 11, 2024.  He attached a newly drafted "Affidavit of a Full Complaint" dated September 15, 2024.  *Id*.  Plaintiff's affidavit describes an altercation he had with his cellmate and he blames internal affairs for the incident.  The ARB received the appeal on September 23, 2024 and denied it.  Acting Director Latoya Hughes concurred with the decision.  Plaintiff did not mention Officer Parker in Grievance K7-0924-954E or the Affidavit.  *Id*.

**Grievance 2: #K7-1024-1194E**

In Grievance K7-1024-1194E dated October 17, 2024, Plaintiff complained that he was not getting along with his new cellmate.  (Def. FOF 13; Doc. 48-2).  He noted that his current cellmate smoked the same drugs that his former cellmate smoked before attacking him.  *Id*.  Grievance K7-1024-1194E was received for first level review on October 18, 2024.  It was sent to the CAO and deemed an emergency.  The grievance was received for second level review on October 21, 2024 and was denied as moot because Plaintiff's cellmate was no longer housed in

the same cell. *Id*. Plaintiff appealed to the ARB on October 25, 2024. The ARB received the appeal on October 30, 2024 and denied it on the merits on November 20, 2024. *Id*.

**LEGAL STANDARDS**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility.

When presented with a motion for summary judgment on the issue of exhaustion, however, the district court's approach to factual disputes is different. In *Pavey*, the Seventh Circuit Court of Appeals instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. *Pavey v. Conley*, 544 F.3d at 742. The Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 464 (June 18, 2025), when it held that exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. Therefore, when the district court is presented with a motion for summary judgment on exhaustion with disputed material facts, it must consider whether intertwinement between exhaustion and the merits requires a jury trial. Here, there is no intertwinement requiring a jury trial[1] and no material factual disputes requiring a *Pavey* hearing. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009). The pending motion for summary judgment can be resolved without a *Pavey* hearing.

---

[1] Unlike *Perttu*, the material facts surrounding exhaustion are not disputed. There is no intertwinement between the facts underlying exhaustion and the merits of the claim against Officer Parker. The questions about exhaustion can be resolved without addressing the questions on the merits, so *Perttu* poses no barrier.

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before bringing a suit in federal court about the conditions of his confinement. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). To properly exhaust, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

The Illinois Administrative Code describes the process that inmates in IDOC custody follow to exhaust administrative remedies. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2017). According to it, an inmate facing an emergency may submit an emergency grievance directly to the Chief Administrative Officer (CAO) (Warden). 20 ILL. ADMIN. CODE § 504.840(c). If the CAO deems the grievance an emergency, it is expedited for processing in whatever manner the CAO specifies. *Id.* If the grievance describes no emergency, it is denied as a non-emergency and must be resubmitted in accordance with the standard grievance procedure. *Id.*

To comply with the standard procedure, an inmate must file his grievance with a counselor within 60 days of the incident giving rise to the grievance. 20 ILL. ADMIN. CODE § 504.830(e). If the grievance is not resolved informally through the counselor, it must be submitted in writing to a grievance officer, who reports his or her findings and recommendations in writing to the CAO within 2 months after receiving the written grievance, when reasonably feasible. 20 ILL. ADMIN. CODE § 504.830(e). The CAO then provides the inmate with a written decision. *Id.* If the inmate is not satisfied with the CAO's response, he files an appeal with the IDOC Director through the

Administrative Review Board (ARB) within 30 days of the CAO's decision. 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of responses from the grievance officer and CAO to his appeal. *Id*. The ARB then considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within 6 months of receipt of the matter, when reasonably feasible. 20 ILL. ADMIN. CODE §§ 504.850(d), (e).

## DISCUSSION

The undisputed material facts support Officer Parker's request for summary judgment. Plaintiff was admittedly aware of the inmate grievance process and used it to file two grievances that are applicable to his claim against Officer Parker: Grievance 1: #K7-0924-954E and Grievance 2: #K7-1024-1194E. (Doc. 51, pp. 7-8). However, neither of these grievances identified Officer Parker in connection with his claim, generally or specifically.

The grievance forms used by Plaintiff explicitly instructed the grievant to: "[p]rovide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved." *Id*. at 26. The IDOC grievance process provides that an inmate grievance must contain factual details about each aspect of the inmate's complaint, including what happened, when, where, and the name(s) of the person(s) involved in the matter. 20 ILL. ADMIN. CODE § 504.810(c). If the inmate does not know the name(s), the inmate must describe each person with as much detail as possible. *Id*. The PLRA only requires a grievance to "alert the prison to the nature of the wrong for which redress is sought" and afford prison officials the opportunity to respond. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *Pavey*, 663 F.3d at 905-06.

7

Here, Plaintiff failed to put the prison on notice of his grievance against Officer Parker under any of these standards. In Grievance 1: #K7-0924-954E (dated September 1, 2024), Plaintiff stated:

> On 8/15/2024, I wrote a letter telling warden Monti about a possible failure to protect. I first told him what happened to me on 3/18/2022 in another failure to protect case number 3:24-cv-0320-JRM. Three weeks before that, I brought it to the Internal Affairs. They call me over to the Internal Affairs Office to ask me did me or my cellie Inmate Carter get along with each other. I told them the only problem that I had with my cellie Inmate Carter is that he smokes that stuff 5 or 6 times a day. . . .

(Doc. 1, pp. 8-9; Doc. 48-2, pp. 10-11; Doc. 51, pp. 26-27). In an "Affidavit of Full Complaint" added later, he again mentioned "internal affairs" but not Officer Parker by name or description. (Doc. 48-2, pp. 1-13).

In Grievance 2: #K7-1024-1194E (dated October 17, 2024), Plaintiff stated:

> On last week Friday, October 12, 2024, yall put a cellie in the cell with name Vincent D. Jones inmate R-34732, who smokes those same drugs that my other cellie smoke, Inmate Carter R-06136, that knocked out 3 bottom teeth, and I told yall about. . . ."

(Doc. 48-2, pp. 4-5). Again, Plaintiff did not name or describe Officer Parker nor mention internal affairs in the second grievance.

Plaintiff attempts to create a genuine issue of material fact by asserting in his Complaint (Doc. 1, p. 15) and Response (Doc. 51, p. 1) that he first wrote "Internal Affairs Officer Parker" about the issue on August 15, 2024. However, he does not support this statement with any evidence or citations to the record.

Plaintiff's remaining arguments focus on the merits of his claim against Officer Parker, but, this case has not reached the merits stage. Because the undisputed facts and law support Officer Parker's motion for summary judgment on the issue of exhaustion, the claim against him will be dismissed without prejudice.

**DISPOSITION**

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies filed by Joshua Parker (Doc. 47) is **GRANTED**.  **COUNT 1** against **JOSHUA PARKER** is **DISMISSED** without prejudice based on Plaintiff's failure to exhaust his administrative remedies before filing suit in federal court against this individual.  Defendant **JOSHUA PARKER** is **DISMISSSED** without prejudice from this action, with judgment to enter accordingly at the close of this case.

**COUNT 1** will proceed against this Defendant Daniel Monti.  The Court will enter a separate Scheduling and Discovery Order lifting the stay on merits discovery for **COUNT 1** against **DANIEL MONTI**.  **The Clerk's Office is DIRECTED to TERMINATE Defendant JOSHUA PARKER as a party in CM/ECF.**

**IT IS SO ORDERED.**

**DATED:  July 7, 2026**

_____
**STACI M. YANDLE**
**Chief U.S. District Judge**